UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Mark Timoneri, | ) | CASE NO. 1:15CV2423 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Speedway, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Speedway LLC's Motion to Dismiss (Doc. 10). This case arises under the Americans with Disabilities Act ("ADA"). For the reasons that follow, the motion is GRANTED. Plaintiff's claims regarding Speedway's locations that he has not visited are dismissed.

**FACTS**

The following facts are taken from plaintiff's complaint. Plaintiff is a quadriplegic and depends on a wheelchair for mobility. He alleges that he frequently visits defendant Speedway's facility located at 29201 Euclid Avenue in Wickliffe, Ohio (the "Subject Property"), because it is

1

close to his home. At the Subject Property, he has "experienced unnecessary difficulty and risk due to faded markings in a purportedly accessible parking space, excessive slopes on the landing at the top of a curb ramp, and the lack of an access aisle adjacent to a purportedly accessible space." (Compl. ¶ 22).

On plaintiff's behalf, investigators examined 18 other locations owned or operated by Speedway and allegedly found a variety of ADA violations. According to the complaint, these violations included: surfaces of purportedly accessible parking spaces with excessive slopes; surfaces of aisles with excessive slopes; landings at the top of curb ramps with excessive slopes; no spaces designated as "van accessible" at one or more groups of purportedly accessible parking spaces; one or more purportedly accessible spaces not marked with required signs; faded markings and cracks in cement of purportedly accessible parking spaces; one or more signs designating spaces as "accessible" mounted less than 60 inches above the finished surface of the parking area; no clear markings designating accessible parking space and access aisle; no access aisle provided adjacent to one or more purportedly accessible spaces; and a curb ramp located on the route to the building entrance with an excessive running slope. (*Id.* ¶ 23 a-r). Plaintiff's investigators discovered between one and four of these violations at each location they visited. Plaintiff alleges in the complaint that he intends to return to these 18 properties to ascertain whether they remain in violation of the ADA but is deterred from doing so as long as the architectural barriers continue to exist. (*Id.* ¶ 30).

Plaintiff asserts that Speedway's "ADA compliance policies are inadequate in both their conception and implementation and are not reasonably calculated to make their facilities fully accessible to, and independently usable by individuals with mobility disabilities." He claims that

2

the alleged access barriers at Speedway's facilities violate Title III of the ADA, which requires that places of public accommodation and commercial facilities be readily accessible to and usable by individuals with disabilities. He brings this suit as a class action under Fed. R. Civ. P. 23(b)(2), seeking a declaratory judgment that Speedway is in violation of Title III and a permanent injunction directing Speedway to take all necessary steps to bring its facilities into compliance with the ADA and to change its policies so that discriminatory barriers do not develop or recur at Speedway's stores in the future. Although plaintiff does not define the scope of the putative class in the complaint, it is clear that he intends to seek certification of a class for properties beyond those identified in the complaint: "The scope of the investigation is in no way related to what the ultimate scope of the class that Mr. Timoneri will seek to certify might be. Mr. Timoneri will not be in a position to make a decision regarding the scope of the class until discovery has been completed." (Pl.'s Br. in Opp. at 2 n.1).

In its motion to dismiss, Speedway argues that plaintiff lacks standing to pursue a claim under Title III regarding its locations that plaintiff has not visited and for which he does not allege any intent to visit. It therefore asks the Court to dismiss those allegations. It also asks the Court to dismiss the class allegations because plaintiff has failed to plead a viable class. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

Speedway brings its motion under Fed. R. Civ. P. 12(b)(6); however, to the extent the motion is based on plaintiff's lack of standing, it is more appropriately considered as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). A party can bring either a facial attack or a factual attack in such a motion. *United States v. Ritchie*, 15 F.3d 592, 598 (6th

Cir. 1994). Because Speedway challenges the sufficiency of the allegations in the complaint and does not rely on other facts or evidence, its motion raises a facial attack. *Id.* In a facial attack, the court must review the motion similarly as it would a 12(b)(6) motion by taking the material allegations of the complaint as true and construing them in a light most favorable to the nonmovant. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-57, 94 S. Ct. 1683, 1686-67 (1974).

When considering a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id*. at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

**ANALYSIS**

**1. Standing**

There is no dispute that plaintiff has standing to pursue his claim regarding the Subject Property. Speedway contends, however, that plaintiff has no standing regarding the Speedway locations that he has not visited and for which he alleges no intent to visit because, as to those locations, he has suffered no injury and is at no risk of future injury.[1] For the following reasons, the Court agrees.

To litigate a case in federal court, a plaintiff must have constitutional standing, "which requires a showing that the plaintiff has suffered: (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested

---

[1] As noted above, plaintiff alleged in his complaint that he intends to visit the 18 properties where his investigators identified ADA violations to ascertain whether the violations have been ameliorated. (He did not allege that he intended to visit a Speedway location other than the Subject Property for any other purpose.) In his brief in opposition, however, he does not dispute Speedway's statements in its motion that plaintiff has no intention to visit these properties, nor has he argued that he has standing to sue for violations at these properties under an intent to return theory or as a tester.

5

relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)). The party invoking federal jurisdiction has the burden of satisfying these elements. *Lujan*, 504 U.S. at 561. Individual standing is a prerequisite for all actions, including class actions. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (citations omitted). "A potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.*

As to the injury-in-fact element that is at issue in this case, "plaintiffs must demonstrate actual present harm or a significant possibility of future harm to justify ... relief." *People Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). Where, as here, a plaintiff seeks injunctive relief, he or she must demonstrate a "real and immediate threat" of injury to satisfy the requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 1667 (1983) (holding that plaintiff who had been choked by the police during a traffic stop five months earlier lacked standing to sue the city for injunctive relief because he could not establish a "real and immediate threat that he would again be stopped ... by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part").

Plaintiff argues that, once his standing is established with respect to the Subject Property, "the question of whether [he] can challenge Defendant's policies as they apply to all of its locations is determined by application of Fed. R. Civ. P. 23, ***not*** by consideration of whether [he] visited the other of Defendant's locations." Speedway agrees that a plaintiff who sufficiently alleges discrimination arising from a common architectural design or common policy can have standing to sue on behalf of a class for locations where he has not visited. It contends, however,

that plaintiff has failed to adequately allege such a common design or policy.

Plaintiff essentially leapfrogs this key question.[2] He asserts that he has sufficiently pled a common policy merely by claiming that, although Speedway has "centralized management policies regarding ADA compliance, its ADA compliance policies are inadequate in both their conception and implementation, and Defendant's facilities continue to be inaccessible to, and not independently usable by, individuals who use wheelchairs." In other words, the common policy that plaintiff appears to allege is that Speedway fails to adequately comply with the ADA regarding individuals who use wheelchairs.

The Court finds that this conclusory allegation of a policy, which would encompass any type of ADA violation regarding individuals with mobility disabilities, is insufficient to confer standing to sue on behalf of a potentially nationwide class. This is not the type of discrete policy

---

[2]  Even the cases that plaintiff cites in support of his argument that the Court should ignore the standing inquiry and jump immediately to class certification are clear that a potential class representative must be challenging a common practice or policy to have standing to sue on behalf of a class. For example, in *Fallick,* the Sixth Circuit noted:

> [O]nce an individual has alleged a distinct and palpable injury to himself he has standing to challenge *a practice* even if the injury is of a sort shared by a large class of possible litigants.... Thus, in the instant matter, once the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits—*a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class*—the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.

*Fallick*, 162 F.3d at 423 (emphasis added).

or practice that would apply similarly to all potential class members that the court contemplated in *Fallick*. Indeed, the variety of examples of noncompliance that plaintiff alleges at the 18 properties visited by his investigators undermines plaintiff's allegation that Speedway adheres to such a common policy or practice.

The court in *King v. O'Reilly Automotive, Inc.*, recently evaluated virtually identical allegations and found them to be insufficient to allege a common policy. 2016 WL 868223, at *3 (E.D. Wa. Mar. 4, 2016). As here, the plaintiff in *King* alleged that, while the defendant had "centralized management policies regarding ADA compliance, its ADA compliance policies are inadequate in both their conception and implementation, and Defendant's facilities continue to be inaccessible to, and not independently usable by, individuals who use wheelchairs." As here, he then followed this allegation with a list of alleged barriers to accessibility for wheelchair-bound customers that the plaintiff's investigators found at a number of the defendant's locations that the plaintiff had not visited. The court concluded that the plaintiff did not have standing to sue on a class-wide basis:

> The alleged violations appear to follow a pattern as they mostly relate to the slope of the ground surrounding parking spaces, but the different allegations vary sufficiently to undermine an allegation of a "common policy or architectural design." Plaintiff's Complaint fails to state how the alleged examples of noncompliance adhere to any common policy or design.

*Id.*

*Equal Rights Center v. Hilton Hotels Corp.*, 2009 WL 6067336 (D.D.C. Mar. 25, 2009), is also persuasive. There, the plaintiffs alleged that they knew of accessibility barriers at 24 Hilton hotels but sought injunctive relief at all 2,869 Hilton hotels nationwide. The plaintiffs did not allege that all of the hotels were architecturally similar, but claimed "somewhat obliquely"

8

that "their injuries arise from Hilton's practices at a corporate level." *Id.* at \*7. The court concluded that these allegations were insufficient to confer nationwide class standing. In doing so, it noted that plaintiffs did not allege any facts that supported their claim that Hilton had adopted a policy of non-compliance with the ADA: "They have pointed to accessibility barriers at fewer than one percent of the Hilton Family Brand hotels in the country. The mere existence of accessibility barriers at some significant percentage of Hilton hotels might provide a sufficient factual basis for claims of a corporate policy of non-compliance, but, as before, the plaintiffs have not made that allegation." *Id. See also Clark v. Burger King Corp.*, 255 F. Supp. 2d 334 (D.N.J. 2003) (finding plaintiff lacked standing to pursue nationwide class action involving locations he had not visited, absent any allegation that there existed commonality of construction or that defendant implemented a corporate policy violative of the ADA). Similarly, plaintiff here apparently seeks injunctive relief against all Speedway locations nationwide and relies on his allegations that he is aware of accessibility barriers at a small number of Speedway locations to argue that he should be permitted to do so. This is simply insufficient to support his "somewhat oblique" allegation that Speedway has a corporate "policy" of not complying with the ADA.

For these reasons, the Court finds that plaintiff has failed to show that he has standing to sue on a class-wide basis.

### 2. Class Allegations

Even if plaintiff had adequately pled facts to establish his standing to sue regarding locations that he has not visited, the class action allegations are insufficient to allow him to pursue class claims for these locations. A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the plaintiff cannot

meet the requirements for maintaining a class action. *See Pilgrim v. Universal Health Card., LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that Rule 23(c)(1)(A) states that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation). If discovery will not "alter the central defect in th[e] class claim," a court may strike class allegations prior to discovery. *Id.*; *see also Cowitt v. CitiMortgage, Inc.*, 2013 WL 940466, at *2 (S.D. Ohio Mar. 8, 2013).

A plaintiff must meet the Rule 23(a) prerequisites and fall within one of the three types of class actions listed in Rule 23(b) to receive class certification. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). To meet the Rule 23(a) requirements, (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of fact or law common to the class"; (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and (4) the named plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of proving that it has met all four requirements of Rule 23. *Young*, 693 F.3d at 537.

Here, the Court need only address commonality because plaintiff's own allegations show that he cannot meet this requirement. To establish commonality, the named plaintiff "must show that [his] claims 'depend upon a common contention' that is 'of such a nature that it is *capable* of classwide resolution—which means that determination of its truth or falsity *will* resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015), *cert. denied,* 2016 WL 1173171 (Mar. 28, 2016) (citing *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2552 (2011)). "In

other words, named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Id.*

Plaintiff relies on his allegation that Speedway employs centralized policies that are violative of the ADA and the examples of architectural barriers that he identified at the Subject Property and the 18 stores that his investigators visited to show that he meets the commonality requirement. Speedway responds that the very examples of non-compliance that plaintiff cites defeat his claim of commonality. According to Speedway, the differences in the alleged ADA violations would require the Court to answer a variety of location-specific questions, precluding a "common answer" for the class. Speedway also points out that the legal standards for ADA compliance differ with respect to accessibility of new construction versus existing facilities that predate the effective date of the ADA. (Pl.'s Br. at 8-9) (citing *Wagner v. White Castle Sys., Inc.*, 309 F.R.D. 425, 431 (S.D. Ohio 2015) (discussing differing standards).

The Court agrees that this is not a situation where "a common question...will yield a common answer for the class." Rather, determining liability as to each Speedway location would require the court to hold a series of "mini-trials," where it would have to conduct an individualized analysis of each location's compliance or non-compliance with the ADA based on the age of the facility and the type of violation claimed. Several courts have rejected class allegations in similar situations for this reason. As one court explained:

> Before any common legal issues can be reached, each restaurant's parking lot must be individually examined, its date of construction or alteration determined, and then a determination must be made as to whether that parking lot meets the ADA standards applicable to the structure depending on the date of construction.... Proving the existence and cause of accessibility barriers at each of the [defendant's locations] would be too fact-intensive and individualized to be

11

> effectively addressed in a single class action. The threshold question–whether any store in particular is out of compliance and if so, in what manner (running slope, cross slope, degree of deviation)–would have to be answered on a store-by-store basis, and the class members at the various 563 nationwide stores would not share common legal issues or salient core facts. Rather, the Court would have to conduct a mini-trial for each restaurant in order to determine if injunctive relief was appropriate.

*Mielo v. Bob Evans Farms, Inc.*, CIV.A. 14-1036, 2015 WL 1299815, *7 (W.D. Pa. Mar. 23, 2015); *see also Wagner*, 309 F.R.D. at 431-32 (holding that wheelchair-bound plaintiffs who had allegedly encountered accessibility barriers at White Castle could not maintain class action against restaurant because they could not "demonstrate[] that the class members at the various 54 Ohio restaurants would share common legal issues or salient core facts").[3]

Though *Mielo* and *Wagner* were decided on motions for certification, plaintiff's own allegations show that the central defects that both courts identified are present in this case. Nor has plaintiff shown how discovery will cure these defects. The Court therefore strikes the class allegations with respect to all Speedway locations that plaintiff has not visited. To the extent plaintiff seeks to pursue a class action regarding the Subject Property, it finds that a determination as to whether he has met the Rule 23 requirements would be more appropriately addressed after he has had an opportunity for discovery.

---

[3] Although Speedway does not argue that plaintiff cannot meet the Rule 23(b)(2) requirement, the Court notes that he likely would also fail this requirement. *See, e.g., Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) (determining, based on allegations in plaintiff's complaint, that Rule 23(b)(2) certification was improper because the allegations "ma[d]e clear that individualized determinations need to be made as to which ADA violations exist at which McDonald's restaurants, a situation in which a class-wide finding of injunctive liability would hardly be appropriate").

**CONCLUSION**

For the foregoing reasons, Speedway LLC's Motion to Dismiss (Doc. 10) is GRANTED. Plaintiff's claims regarding Speedway's locations that he has not visited are dismissed.

IT IS SO ORDERED.


        /s/ Patricia A. Gaughan
        PATRICIA A. GAUGHAN
        United States District Judge

Dated: 5/12/16